[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband brought this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown, by complaint returnable May 30, 1995. He also sought alimony, custody and support of the parties' two minor children and other relief, as on file. The defendant wife admitted all of the allegations in the plaintiff's amended complaint. In her cross complaint, she too seeks a dissolution of the marriage on the ground of irretrievable breakdown, custody and support of the minor children, alimony, and other relief, as on file.
Each spouse was represented by counsel throughout these proceedings. Each testified and submitted financial affidavits and written proposed orders. The husband submitted a child support guidelines worksheet. Numerous documents were introduced into evidence, including tax returns, bank statements and check registers. The parties requested, and were granted, time to submit posttrial memoranda, which the court has considered.
From the evidence, I find as follows.
The couple were married September 28, 1990, in Norwich, Connecticut. The husband resided continuously in this state for at least one year prior to the filing of the complaint. There are two minor children who are issue of the marriage, Michael J. Cutsinger, born January 4, 1991, and Kevin D. Cutsinger, born February 27, 1993. No other minor children were born to the wife since the date of the marriage. Neither spouse or children were recipients of public assistance. All statutory stays have expired. The court has jurisdiction. CT Page 5256-NNNN
At the outset of trial, the parties agreed to an order of joint legal custody of their minor children, with physical custody and primary residence with mother, and rights of visitation to the father as follows: alternating weekends 5 p.m. Friday to 6 p.m. Sunday, 7 p.m. during school vacation, together with alternating Wednesdays (after the non-visitation weekend) 4:30 p.m. to 7 p.m.; mother to have Mother's Day, father, Father's Day. Holiday and summer vacation visitation were to be referred to Family Services for mediation.
The couple also agreed that the husband would maintain his job-related life and health insurance for the benefit of the children, and that the couple share equally the unreimbursed/uncovered health expenses. Also, they agreed on the transfer of certain tangible personal property, and that each would retain certain automobiles now in their respective possession.
The court finds this partial agreement fair and equitable and in the children's best interest and approves the same.
The husband is 28 years old, in good health, a high school graduate, and on active duty in the U.S. Navy as a machinist. He has served for nine and one-half years, and his current enlistment expires in 1997. He achieved an E-6 grade, but was recently demoted one grade to E-5, resulting in loss of pay. Despite his demotion, following a `captain's mast' proceeding, his overall evaluation rating is favorable, and he was recommended for retention in the military service.
Also, as a result of the end of his sea tour, and return to shore duty, he has lost additional extra pay and benefits. These benefits will resume when he returns to sea duty in the future. This dissolution itself will result in additional decreases in benefits. His gross earnings, as a result, will be $445 per week with a net of $352 per week. His pension benefits are unvested. In the recent past, his military earnings were in the area of $30,000 per annum. Prior to his military service, he worked as a grocery clerk.
The wife is 28 years of age, in good health, and a high school graduate. Since high school, she has always worked for McDonald's. She is now a floor supervisor, works 20-30 hours per week, and earns on average, $250 per week gross, $206 CT Page 5256-OOOO per week net.
The couple had difficulty communicating with each other, and the marriage became greatly stressed when the younger child was born with Down's Syndrome. The marriage essentially destructed when the husband began a relationship with another woman, with whom he now shares a dwelling and living expenses.
The parties separated in the spring of 1995, when the husband left the home; the marriage is now irretrievably broken down, and a greater share of the responsibility for that must lie at the husband's feet.
The couple have accumulated little in the way of assets. Their jointly owned house, which they vacated, is under foreclosure, has no equity, and they are attempting to negotiate a `deed in lieu of foreclosure.' The husband reports three motor vehicles, with net equity of $4,200; and bank accounts of $700. He operates an Amway distributorship business for which he reports no value. Against these assets, he lists $9,800 in liabilities, all of which are credit cards. He also discloses no value for his household furniture and furnishings.
The wife reports $500 in household furniture, $845 in bank accounts, $154 in McDonald's stock and $136 in her job related 401K plan. She reports no liabilities and has modest living expenses; when it became clear she could no longer maintain the family home, she moved in with her parents, where she now resides with the children.
These additional findings are made.
Both parties successfully completed the Parenting Education Program, General Statutes § 46b-69b.
There is an arrearage due the wife from the husband on account of past due child support of $1,550, as of the date of hearing, July 16, 1996, which is being repaid at the rate of $25 per week.
An order pendente lite, based on the parties' stipulation, that the husband transfer custodianship to the wife of two custodial accounts held for the children has not yet been complied with. CT Page 5256-PPPP
The child support and arrearage guidelines suggest that the husband's child support obligation should be $132 per week for the parties' two minor children, based on his anticipated earnings, postdissolution.
The husband's financial affidavit is inaccurate in several respects, including an overstatement of his weekly living expenses, utilities, food, etc., when in fact, his female companion is sharing same. They also commingle funds. Also, he overstated his car loan balance by over $4,000. He denies in testimony having had a safe deposit box, although his tax return showed a deduction. His checking account balance was significantly understated. I find these inconsistencies cast doubt on his credibility.
He began a business partnership with others dealing in sports memorabilia. This business was a loser and closed. Most of his liabilities (some not reported on his affidavit) are business related. He denies receiving any income from his Amway distributorship, claiming that any income goes to his companion. This, too, is at variance with his financial affidavit, which claims that "all profits are used for expenses to build and operate the business." I find that Amway has generated at least $700 in profits, or $100 per month income available to the husband, which he has not accurately reported on his financial affidavit. However, I cannot conclude from the evidence that the Amway operation has any value, although the husband has purchased thousands of dollars of goods and other merchandise from Amway in a relatively short time, and he enjoys substantial cash flow.
I find that the husband has cared for the children when the wife was at work, and at other times, and has made nonmonetary contributions to the family in child care, etc. The wife's nonmonetary contributions are greater.
He has greater earnings and earning capacity than she has, and thus, a greater opportunity than she has to acquire capitol assets and income in the future.
The older child will commence school full time in 1997; it is uncertain when the younger child will be able to. At present, they attend half time.
It would be inequitable or inappropriate to apply the CT Page 5256-QQQQ child support guidelines strictly, in the light of the husband's earning capacity and cash flow available to him from his Amway operations. Additionally, he could dispose of one of his vehicles and reduce his living expenses. Furthermore, as he shares living expenses with his female companion, his own personal expenses are reduced. I deem these to be `other equitable factors,' which, alone or together with the plaintiff's earning capacity, see Guidelines, § 46b-215a-3 (b)(1)(B) and (6)F, justify an upward departure from the guidelines to $160 per week.
I also conclude that while the wife resides in her parents' home, that her net income of $206 per week when added to the child support order of $160 per week, would provide her with a small weekly surplus over her modest expenses. However, I also find that her desire and plan to locate suitable housing, independent of her parents, is appropriate, and that she will require additional support from the plaintiff in order to enable her to do so. This is especially so in view of her present inability to work fulltime.
I have considered all of the criteria in General Statutes §§ 46b-62, 46b-81, 46b-82, 46b-84 and 46b-215a and b, in the light of the evidence and my findings in the determination of the orders set forth herein. I have also considered the tax implications and consequences of said orders.
Accordingly, judgment shall enter dissolving the marriage on the ground of irretrievable breakdown, and the following orders shall enter.
(1) Joint legal custody of the parties' two minor children is awarded to the parents, primary physical custody with mother, rights of visitation to father as follows: every other weekend, from Friday at 5 p.m. to Sunday 6 p.m., 7 p.m. during summer school vacation; alternating Wednesdays from 4:30 p.m. to 7 p.m. (after the nonvisitation weekend); Mother's Day with mother; Father's Day with father. School vacation and holiday visitation is referred to Family Services for mediation.
(2) The husband shall pay child support of $160 per week, $80 per child per week. He shall have the youngest child as a dependency exemption for tax purposes if he is current on the child support and pendente lite arrearage orders, as of the end of the applicable tax year. The wife shall have the older CT Page 5256-RRRR child.
(3) The husband shall pay to the wife, as periodic alimony, the sum of $20 per week, for a period of four years, which shall terminate sooner upon the death of either party, the wife's remarriage or cohabitation within the meaning of General Statutes § 46b-86 (b).
(4) The husband shall pay to the wife the sum of $20 per week on the child support arrearage of $1,550.
(5) Each spouse shall maintain the minor children on their respective employment related health insurance, and equally share the unreimbursed and/or uncovered expenses for the children. An order pursuant to General Statutes § 46b-84d shall enter; either parent desiring reimbursement from the other shall first mail to the other copies of the bills, an insurance statement of benefits of the amount due and a computation. The reimbursing parent shall pay the amount due within thirty (30) days.
(6) Each spouse shall designate the minor children until each reaches the age of 19, in equal shares, as irrevocable beneficiaries of the life insurance policies shown on their financial affidavits: husband's SGLI, $200,000; wife's, Prudential, $97,737. Each shall execute and deliver an authorization to the other, so the other may obtain information to the status and good standing of the applicable policy. In the event husband separates from the military service, he shall convert his SGLI insurance to VGLI insurance to the extent afforded by the present premium, $18 per month. In the event wife desires additional coverage, she may pay for such. To effectuate this provision, husband shall give the wife sixty (60) days prior notice of his intent to leave the military.
(7) The husband shall pay to the wife, toward her counsel fees, the sum of $900, at the rate of $15 per week. I find that a significant portion of the wife's counsel fees were reasonably incurred and necessary for her representation in this case, and are reasonable in amount, and the denial of counsel fees in toto would impair or undermine the other financial orders entered.
(8) The payments for child support, alimony, arrearages, and counsel fees shall be secured by immediate wage CT Page 5256-SSSS garnishment.
(9) All right, title and interest in the following is assigned to the wife: the personal property shown on her `Request for Return of Personal Property' (agreed to by the parties); the 1985 Chevrolet Blazer; the tangible personal property now in her possession; her bank account; and her McDonald's stock and 401K plan.
(10) All right, title and interest in the following is assigned to the husband: his bank accounts; the 1993 Pontiac and 1986 Oldsmobile motor vehicles; and his interest in Amway.
(11) The husband is ordered to transfer the custodianship of the children's accounts to the wife.
(12) The husband shall pay all of the liabilities shown on his financial affidavit, Section 3, and save the wife harmless. I make no order respecting the apportionment of liability, if any, for a deficiency judgment arising out of the foreclosure of the marital dwelling.
(13) All documents and instruments incidental or necessary to the effectuation of the orders entered, including the decree, shall be completed and exchanged including the transfer of personal property, within thirty (30) days hereof.
Teller, J.